*478
ON MOTION FOR REHEARING

CIKLIN, J.
The Appellant, Kimberly Dinkines, moved for rehearing, requesting that on remand, her resentencing be conducted by a different judge. We grant the motion, withdraw our previously issued opinion, and substitute the following in its place.
Kimberly Dinkines appeals the sentence imposed after she was found guilty of false verification of ownership or false identification given to a pawnbroker. Dinkines argues that because her Criminal Punishment Code score was four, her conviction was for a non-forcible felony, and no competent evidence existed that she was a danger to the public, the court was required to impose a nonstate prison sanction instead of the three years in prison she received. We agree with Dinkines. Absent a proper finding that she was a danger to the public, the trial court could not impose a three-year sentence as it did. As such, we reverse Dinkines’s sentence and remand for a new sentencing hearing with instructions that the trial court impose a nonstate prison sentence.
In 2010, the state charged Dinkines with dealing in stolen property and false verification of ownership or false identification given to a pawn broker.[1] The matter proceeded to a jury trial in 2012.
A state witness testified that he purchased a lawn mower in early 2010 for approximately one hundred dollars. He kept the lawn mower underneath the covered carport at his house in Broward County. Early on September 28, 2010, he noticed that the lawn mower was missing and reported it stolen.
A few days later, the man received a call from a detective saying that he believed he had located the lawn mower at a local pawnshop and asked the man to meet him there. As soon as the man saw the lawn mower at the pawnshop, he knew it was his. The man was required to pay the pawnshop forty-five dollars to reclaim his property.
The pawnshop’s owner testified that he recognized a Florida Pawn Broker Transaction Form from his shop that indicated Dinkines sold the mower to the pawnshop on September 27, 2010. He testified that the form listed Dinkines’s address based on whatever her personal identification document indicated at the time. The pawnshop owner said that Dinkines was with someone else when she sold the mower but the pawnshop owner could not remember any details. Also on the same form, Dinkines signed and gave a fingerprint, both of which served as pledges that the mower was hers.[2]
The jury acquitted Dinkines on the charge of dealing in stolen property and returned a guilty verdict on the charge of false verification. A month later, the trial court held a sentencing hearing. Defense counsel submitted multiple letters from individuals familiar with Dinkines who vouched for her character. The defense requested a withhold of adjudication and one year of probation, which is what the presentence investigation report also recommended. The state noted that Dinkines *479 had received a withhold on an unrelated 1999 felony conviction.
The state then told the trial court about an individual, Christopher Lynn, who was allegedly involved with Dinkines in the lawn mower incident. The state requested that the trial court take judicial notice of Lynn’s case file, which was still pending. According to the state, Lynn had been classified as a career criminal and had two counts of burglary and two counts of petit theft that were still open. The state then explained to the trial court that Lynn’s case file revealed evidence indicating that Dinkines was more involved with the scheme to pawn stolen property than her trial revealed. Based on this additional information, the state sought an adjudication of guilt, three years of probation and 180 days in the county jail.
Defense counsel disagreed ■ with the state’s characterization of Dinkines’s involvement with other thefts and pawnings.
The trial court then made'the following pronouncement, apparently based solely on the state’s representations:
All right, look, I presided over this trial. I heard the testimony. Ms. Dinkines, you are a thief, that’s what it comes down to. Without your participation, Mr. Lynn wouldn’t have been able to pawn these items. That much is clear to me. You’re the yin to his yang, so to speak, you are the other side of the coin here. You are a facilitator in these transactions. You are a participant in all of them, especially with regards to this one here, the one I’m looking at, it’s clear your participation.
I don’t think you are remorseful. I don’t think you care about the victim in this case. I think without a meaningful punishment here the reality is you would go out and do it again. The best I can hope for is a meaningful punishment to protect the citizens of Broward County from you.
So I’m adjudicating you on this charge and I’m sentencing you to three years in Florida State Prison with credit for all time served.
Defense counsel filed a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(1), and at a later hearing argued that the trial court could not impose prison time because Din-kines scored only four in the Criminal Punishment Code, the conviction was for a non-forcible felony, and the trial court based its finding that Dinkines was a danger to the community on the argument of the assistant state attorney during the sentencing hearing-and not evidence or testimony. The trial court disagreed, finding that the maximum possible sentence was five years. The trial court held steadfast to its position that Dinkines was an integral participant in a theft and pawning scheme:
My problem with this ... is without Ms. Dinkines, this other, I can’t remember his name, the other participant in the crime, he could not have completed this crime. He couldn’t have made it happen. It required her. It required her to do this.
Defense counsel suggested to the trial judge that his conclusions were unsubstantiated and based oh no proof offered at the trial or at the sentencing hearing “as to how the lawn mower was stolen, by whom it was stolen.” Defense counsel reminded the court that Dinkines was found guilty only of the false verification of ownership charge and was actually acquitted of dealing in stolen property. Additionally, defense counsel noted, Dinkines was not charged with grand theft or burglary or any other crime: “There is no evidence that she stole the lawn mower from the home.... There is no evidence that any *480 one connected with Ms. Dinkines stole the lawn mower from the lawn mower owner’s home.” The trial court responded that “[t]he record will speak for itself.”
The trial court rejected all of defense counsel’s arguments but agreed that written findings were necessary to exceed the statutorily mandated maximum sentence. The trial court’s written order included the following findings:
(1) That this crime was not an isolated incident and that the Defendant was an important actor in same and critical to the completion of the crime in that the stolen item could not have been sold to the pawnbroker without her participation.
(2) That the Defendant refused to cooperate in any meaningful way with law enforcement and is not sincere in her expression of remorse.
(3) That the Defendant poses a very real threat to the community and that imprisonment is the only real deterrent this Court sees to future criminal acts by this Defendant.
Dinkines appeals her sentence.
Section 775.082(10), Florida Statutes (2010), adopted in 2009, provides:
If a defendant is sentenced for an offense committed on or after July 1, 2009, which is a third degree felony but not a forcible felony as defined in s. 776.08, and excluding any third degree felony violation under chapter 810, and if the total sentence points pursuant to s. 921.0024 are 22 points or fewer, the court must sentence the offender to a nonstate prison sanction. However, if the court makes written findings that a nonstate prison sanction could present a danger to the public, the court may sentence the offender to a state correctional facility pursuant to this section.
§ 775.082(10), Fla. Stat. (2010). Both parties agree that this statute applied to Din-kines as she received a Criminal Punishment Code score of four and was convicted of a non-forcible felony.
As such, the trial court was required to sentence Dinkines to a nonstate prison sanction. The only exception to this mandated sentence was upon the trial court’s written findings that imposing a nonstate prison sentence could be a danger to the public.[3]
In the written order entered to justify its decision to not mitigate the defendant’s sentence, the trial court clearly took Din-kines’s perceived lack of sincere remorse into consideration. This constitutes reversible error.
Whether a defendant has shown remorse is, of course, a consideration the court may give when determining whether to grant a mitigation sentence under section 921.0026(2)(j), Florida Statutes (2010) (listing whether the “offense was committed in an unsophisticated manner and was an isolated incident for which the defendant has shown remorse” as a factor to consider in a mitigation request). See Green v. State, 84 So.3d 1169, 1171 (Fla. 3d DCA 2012) (“[A] defendant’s expression of remorse and acceptance of responsibility are appropriate factors for the court to consider in mitigation of a sentence....”).
However, this remorse factor was of no legal import regarding Dinkines’s sentence pursuant to the various requirements of section 775.082(10). By virtue of the statute, Dinkines automatically fell *481 under the mandatory mitigated sentence of a nonstate prison sanction. The trial court did not have discretion to consider whether Dinkines was entitled to the mitigation sentence under the traditional factors of section 921.0026(2) because those factors were not applicable to Dinkines. Thus, the trial court’s clear consideration of Dinkines’s perceived lack of meaningful remorse in imposing a three-year state prison sentence constituted a due process violation and is therefore grounds for reversal. Indeed, “[r]esentencing is required even if this was but one of several factors the court considered in imposing its sentence.” Id. (citations omitted).
The second argument advanced by Din-kines — that the trial court erred by considering other crimes for which she was acquitted or not charged at all — also appears to warrant a remand for resentencing. This court has held that “[i]t is a violation of due process for the court to rely on conduct of which the defendant has actually been acquitted when imposing a sentence.” Doty v. State, 884 So.2d 547, 549 (Fla. 4th DCA 2004) (citations omitted). If it appears that the trial court has done so, the state thán has the burden to prove that the trial court did not rely on improper factors in sentencing. Id. (citation omitted); see also Williams v. State, 8 So.3d 1266, 1267 (Fla. 1st DCA 2009) (“When portions of the record show the trial court relied upon prior acquittals in determining a defendant’s sentence, the State has the burden to demonstrate those considerations played no part in the sentence imposed.” (citation and quotation marks omitted)).
Here, the trial court did not merely express surprise that Dinkines was acquitted of dealing in stolen property but also labeled her a “thief.” The trial court surmised that Dinkines was an integral part of Lynn’s plan in that Lynn could not have committed multiple acts of theft without the assistance of Dinkines. Further, the trial court went beyond just its consideration of the charge on which Dinkines was acquitted (dealing in stolen property) and brought into the sentencing mix a host of uncharged crimes and Lynn’s criminal file even though Dinkines was not listed as a co-defendant in Lynn’s case.
Thus, the burden is the state’s to prove that the impermissible factors played no role in Dinkines’s sentence. The state’s brief argument as to this issue amounted to nothing more than a conclusory statement. This is insufficient; and, based on the trial court’s statements — both oral and written — it does not appear that the state could possibly advance any persuasive argument that the trial court did not rely on these impermissible factors in sentencing Dinkines.
Therefore, we reverse Dinkines’s sentence and remand for resentencing with instructions to impose a nonstate prison sanction. The record in this case does not support the trial court’s finding that Din-kines could be a danger to the public without a prison sentence. Thus, the trial court must fashion a nonstate prison sentence that comports with section 775.082(10). See Sprott v. State, 99 So.3d 634, 635 (Fla. 1st DCA 2012) (remanding for resentencing with restriction that the trial court impose a nonstate prison sanction); Jones v. State, 71 So.3d 173, 176 (Fla. 1st DCA 2011) (finding that the record did not support the trial court’s finding of potential future dangerousness and therefore remanding for a nonstate prison sanction only).[4] Resentencing shall be be *482 fore a different judge. See Jackson v. State, 39 So.3d 427 (Fla. 1st DCA 2010); Doty, 884 So.2d at 551.

Reversed and remanded with instructions.

DAMOORGIAN, C.J., and CONNER, J., concur.

. "Any person who knowingly gives false verification of ownership or gives a false or altered identification and who receives money from a pawnbroker for goods sold or pledged commits” a third- or second-degree felony depending on the amount of money involved. § 539.00 l(8)(b)8., Fla. Stat. (2010).

. Dinkines stipulated that the thumbprint on the Florida Pawn Broker Transaction Form from the pawnshop belonged to her.

. As Dinkines's conviction was for a third-degree felony, the statutory maximum for her crime was five years. See § 775.082(3)(d), Fla. Stat. (2010). This court has recently characterized section 775.082(10) as a "mandated mitigation of an otherwise available maximum penalty.” Porter v. State, 110 So.3d 962, 963 (Fla. 4th DCA 2013).

. In light of our decision, we do not find it necessary to discuss Dinkines’s other arguments for reversing her sentence.