NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ANDRES RODRIGUEZ-AGUILAR,      )
                               )
          Appellant,           )
                               )
v.                             )          Case No. 2D14-1719
                               )
STATE OF FLORIDA,              )
                               )
          Appellee.            )
_____)

Opinion filed March 9, 2016.

Appeal from the Circuit Court for
Hillsborough County; Gregory P. Holder,
Judge.

Howard L. Dimmig, II, Public Defender,
and Maureen E. Surber, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Jessica Stephans,
Assistant Attorney General, Tampa, for
Appellee.


ALTENBERND, Judge.

        Andres Rodriguez-Aguilar appeals his order of revocation of probation and

the resulting sentence of five years in prison.  We conclude that the trial court erred in

imposing a prison sentence under section 775.082(10), Florida Statutes (2011).  We

thus reverse the sentence and remand for sentencing with instructions to impose a nonstate prison sanction. See Bryant v. State, 148 So. 3d 1251, 1258-59 (Fla. 2014).

In 2012, the State charged Mr. Rodriguez-Aguilar with one count of failure to redeliver leased personal property—a television and a laptop—to Aaron Rents, which offense is a third-degree felony. See § 812.155(3), Fla. Stat. (2011). Mr. Rodriguez-Aguilar negotiated a plea for a withhold of adjudication and an eighteen-month term of probation, requiring restitution of $2509.95. His scoresheet at the time reflected one prior felony, which involved uttering a forged instrument, and his total score was seven points. The trial court entered an order of probation.

As explained in our opinion in Rodriguez-Aguilar v. State, No. 2D14-2793 (Fla. 2d DCA Mar. 9, 2016), in December 2013, Mr. Rodriguez-Aguilar was arrested after police observed him enter and briefly operate a motor vehicle that had been reported stolen. An officer who searched him incident to the arrest discovered a loaded firearm in a pocket of Mr. Rodriguez-Aguilar's pants. This resulted in the new charges discussed in case number 2D14-2793 and in this revocation of probation proceeding. The affidavit of violation also alleged that Mr. Rodriguez-Aguilar had violated his probation by committing the offenses of grand theft of an automobile and burglary of an unoccupied conveyance and by failing to pay restitution.

The nonjury hearing on the revocation of probation occurred on March 6, 2014, about six weeks before the jury trial in the proceeding for the new law violations. At the nonjury hearing, the State called several witnesses, including four officers who were involved in the investigation leading to Mr. Rodriguez-Aguilar's arrest. After the State rested, Mr. Rodriguez-Aguilar testified. Contrary to the testimony of the officers,

he denied driving the vehicle or having a firearm in his possession when he was arrested. The court found that the State had not proven the grounds relating to the burglary and theft of the automobile but that the State had proven the grounds relating to the firearm. It then immediately proceeded to the sentencing phase.

Because of the violation of probation, Mr. Rodriguez-Aguilar's scoresheet totaled thirteen points at the sentencing hearing on the violation of probation. This score was well below the twenty-two points necessary under the Criminal Punishment Code for the imposition of a state prison sanction based on a conviction of a felony that was not a forcible felony. See § 775.082(10). The State summarily argued that Mr. Rodriguez-Aguilar should be sentenced to five years' imprisonment, providing no factual basis or legal justification for this prison sentence. Mr. Rodriguez-Aguilar's attorney responded: "Judge, I'd like to tell you that I'm arguing for supervision, but that would not be an appropriate thing for me to say right now. So I'm going to ask that you sentence him to an appropriate sentence, which would be less than the five years."[1] The judge sentenced Mr. Rodriguez-Aguilar to the maximum five-year sentence without any explanation about how this sentence could be imposed given the scoresheet.[2] Mr. Rodriguez-Aguilar's attorney then objected to the sentence because his client's

---

[1]We are unable to determine from our record why defense counsel thought it would be inappropriate to argue for supervision. From the record, the trial court seemed to be very bothered by the fact that Mr. Rodriquez-Aguilar had essentially testified that the officers were committing perjury concerning the circumstances surrounding his arrest. But that would not be a reason to dispense with an argument for a nonstate prison sanction.

[2]The sentence imposed six weeks later is a ten-year sentence consecutive to this sentence. Neither decision on appeal disturbs the ten-year sentence.

scoresheet had fewer than twenty-two points. The trial court responded stating only: "Yes, I understand. I understand."

The written judgment and uniform commitment to custody were signed on March 6, 2014, the same day as the hearing, although they were not filed at that time. Oddly, on March 12, the trial court entered an order titled "Written Findings Pursuant to Section 775.082(10), Florida Statutes." Given that no one at the sentencing hearing mentioned section 775.082(10), that no additional evidence was presented at the sentencing hearing, and that no findings were orally announced at the hearing before the sentence was imposed, it is unclear what prompted the trial court to enter this order after the sentence had been imposed and Mr. Rodriguez-Aguilar had begun serving it. The order of revocation, the written sentence, and the uniform commitment were subsequently filed on March 14.

Section 775.082(10) states:

> If a defendant is sentenced for an offense committed on or after July 1, 2009, which is a third degree felony but not a forcible felony as defined in s[ection] 776.08, and excluding any third degree felony violation under chapter 810, and if the total sentence points pursuant to s[ection] 921.0024 are 22 points or fewer, the court must sentence the offender to a nonstate prison sanction. However, if the court makes written findings that a nonstate prison sanction could present a danger to the public, the court may sentence the offender to a state correctional facility pursuant to this section.

See also Fla. R. Crim. P. 3.704(29).

Recently, in Bryant, the supreme court characterized this statute as a "reinstate[ment]" of "[t]he practice of upward departure sentences," which had been abolished with the passage of the Criminal Punishment Code in 1998. Bryant, 148 So.

- 4 -

3d at 1254-58. According to the statute, an upward departure to a prison sentence requires a written finding that imposing a nonstate prison sanction in a given case "could present a danger to the public." § 775.082(10). This is a factual question requiring a finder of fact to make a determination based on evidence in the record. See Jones v. State, 71 So. 3d 173, 174-76 (Fla. 1st DCA 2011) (concluding that the trial court's written findings were not supported by the record and did not justify a prison sentence under section 775.082(10)).

In this case, Mr. Rodriguez-Aguilar was not placed on notice that his danger to the public was an issue being tried by the court without a jury.[3] He was never informed that he had the right to present evidence on this issue. His attorney did not argue the issue because the State never asked for a sentence based on this special factual finding. Mr. Rodriguez-Aguilar never had an opportunity in court to object to the court's written findings because the order was delivered to his attorney days after he had already been sentenced. Thus, there are some serious due process and Sixth Amendment concerns in this case.

"Fundamental principles of justice require that decisions restricting a person's liberty be made only after a neutral magistrate gives due consideration to any argument and evidence that are proper." Ree v. State, 565 So. 2d 1329, 1332 (Fla. 1990), holding modified by State v. Lyles, 576 So. 2d 706, 708-09 (Fla. 1991), receded from on other grounds by Smith v. State, 598 So. 2d 1063, 1066 (Fla. 1992). For this

_____

[3]Cf. Plott v. State, 148 So. 3d 90, 95 (Fla. 2014) (concluding that the failure to obtain a waiver of trial by jury before conducting a resentencing under Heggs v. State, 759 So. 2d 620 (Fla. 2000), during which time an upward departure sentence was imposed based on factual findings, rendered the defendant's sentence illegal for purposes of Florida Rule of Criminal Procedure 3.800(a)).

- 5 -

reason, a trial court imposing an upward departure sentence under the pre-Criminal Punishment Code guidelines was always required to provide the reasons for departure at the time the sentence was imposed.[4]

We are not holding that all of the sometimes arcane procedural requirements for the imposition of an upward departure sentence under the old sentencing guidelines apply to section 775.082(10). But to the extent that those rules were needed to satisfy due process and the requirements for oral pronouncement of a sentence in open court, those older rules inform current courts of the procedures that may be important for the imposition of a sentence under section 775.082(10). Thus, although section 775.082(10), as a matter of substantive law, makes no reference to the procedures required in open court prior to the rendering of written findings, the total absence of those procedures in this case is very troubling.

These due process and Sixth Amendment concerns aside, we conclude that the trial court erred in imposing a prison sentence in this case because the court's written findings pursuant to section 775.082(10) are not supported by the record. The court's order relies on the evidence that the State presented and the trial court considered to determine whether Mr. Rodriguez-Aguilar had violated his probation. In its order, the trial court first finds that a nonstate prison sanction for Mr. Rodriguez-

---

[4]See, e.g., Fla. R. Crim. P. 3.702(d)(18) (requiring a trial court, in imposing an upward departure under the 1994 sentencing guidelines, to "orally articulat[e]" the reasons for departure at the time of sentencing and to file a signed, written statement delineating the reasons for departure within fifteen days of the date of sentencing); Ree, 565 So. 2d at 1331 (interpreting Florida Rules of Criminal Procedure 3.701(b)(6) and 3.701(d)(11) and section 921.001(6), Florida Statutes (1987), and holding that, under the original guidelines sentencing scheme, written reasons for an upward departure must be entered contemporaneously or at the time of sentencing).

Aguilar could present a danger to the public because he "committed multiple serious violations of his probation conditions." It supports this finding with two virtually identical paragraphs that find that Mr. Rodriguez-Aguilar twice violated condition four of his probation and once violated condition five by having the gun in his pants pocket. Thus, he actually committed a single act that qualified as multiple violations. Without minimizing the offenses of carrying a concealed weapon and possessing a weapon as a felon—even a felon convicted of uttering a forged instrument and failing to redeliver leased property—this evidence is simply not evidence sufficient to support a finding of fact that Mr. Rodriguez-Aguilar had "committed multiple serious violations" of probation.

The trial court in its order next finds that a nonstate prison sanction for Mr. Rodriguez-Aguilar could present a danger to the public because Mr. Rodriguez-Aguilar has proven that he "cannot live at large without engaging in a continuous pattern of criminal activity." It bases this finding on "his arrest for several offenses," even though the court did not find that the State had proven the burglary or the grand theft charges by even the preponderance of the evidence. We conclude that a prediction of future danger to the public that allows for a prison sentence under section 775.082(10) cannot be established by proof of alleged prior offenses when the proof falls below the standard of preponderance of the evidence; proof that merely reaches the level of probable cause or reasonable suspicion is not sufficient. See Dinkines v. State, 122 So. 3d 477, 481 (Fla. 4th DCA 2013) (concluding that the trial court erred in relying on offenses for which the defendant was either acquitted or never charged to support its findings under section 775.082(10)); Jones v. State, 71 So. 3d 173 (Fla. 1st DCA 2011) (concluding that the trial court's findings under section 775.082(10) of the defendant's future

dangerousness were "speculative at best because it d[id] not appear from the record that [the defendant] ha[d] a history of vehicle accidents or engaging in high speed chases with law enforcement").[5]

Finally, the order relies upon the trial court's following finding:

> [Mr. Rodriguez-Aguilar] made false statements under oath. [He] testified that he had not driven the stolen vehicle from which he was removed and arrested and that he did not possess the firearm found in his pants pocket; however, testimony from the hearing shows that he was observed driving the stolen vehicle and subsequently arrested while in the stolen vehicle. Moreover, the firearm was actively recovered from [his] pocket.

Without minimizing the need for witnesses to testify honestly under oath, a trial court's determination that a defendant has made false statements under oath simply is not evidence that supports a prediction that the defendant will be a danger to the public in the future. Cf. Dinkines, 122 So. 3d at 480-81 (concluding that the trial court's improper consideration of the defendant's lack of remorse in imposing a prison sanction under section 775.082(10) required reversal). As Mr. Rodriguez-Aguilar accurately argues on appeal, in a normal sentencing proceeding it is regarded as fundamental error and a denial of due process for a trial judge to consider a defendant's refusal to admit guilt, unwillingness to take responsibility for his actions, or the untruthfulness of his testimony. See, e.g., Williams v. State, 164 So. 3d 739, 740-41 (Fla. 2d DCA 2015); Bracero v. State, 10 So. 3d 664, 665-66 (Fla. 2d DCA 2009); Hannum v. State, 13 So. 3d 132, 135-36 (Fla. 2d DCA 2009). There arguably may be a slight distinction between a

---

[5]See also Fla. R. Crim. P. 3.701(d)(11) (explaining that for offenses prior to 1994, "[r]easons for deviating from the guidelines shall not include factors relating to prior arrests without conviction or the instant offenses for which convictions have not been obtained").

finding of danger based on a defendant's testimony at trial and the imposition of a prison sentence whose length is based on the court's conclusion that the defendant testified untruthfully. But in this case we conclude that the testimony is not competent evidence to establish a future danger.

We note that six weeks after this hearing, the trial court sentenced Mr. Rodriguez-Aguilar in case number 2D14-2793 to a consecutive sentence of ten years' imprisonment with a three-year minimum mandatory term for the same gun in his pants. The "danger" that arguably required a longer sentence was addressed in that case. We make no holding as to this observation, but it suggests that this particular sentencing method might reasonably be deferred until the outcome of the jury trial on the new charges in cases similar to this. Concerns under the old guidelines sentencing procedures about the possibility of imposing more than one sentencing enhancement based on a single act may be concerns under this statute as well. Cf. Lambert v. State, 545 So. 2d 838, 841 (Fla. 1989) (holding that under the old sentencing guidelines, even when a conviction on a new law offense was obtained prior to sentencing on the probation violation, factors related to the violation could not be used as grounds for a departure on the sentence for the violation).

In Bryant, the supreme court held that when a trial court fails to provide written reasons for an upward departure sentence under section 775.082(10) or when the reasons the trial court provides are found to be invalid on appeal, the trial court must impose a nonstate prison sanction on remand. Bryant, 148 So. 3d at 1258-59. Thus, on remand the trial court shall impose a nonstate prison sanction in accordance with section 775.082(10).

- 9 -

Affirmed in part, reversed in part, and remanded.


NORTHCUTT and CRENSHAW, JJ., Concur.